UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DELANEY GOULD,
a Minor, by her Parents and
Natural Guardians, THOMAS and
JENNIFER GOULD, (h/w), THOMAS
GOULD and JENNIFER GOULD,

    Plaintiffs,

     v.

TJX COMPANIES, INC.
individually, and d/b/a
MARSHALLS DEPARTMENT STORE,

    Defendant.

CIVIL NO. 11-288(NLH)(KMW)

**OPINION**

**Appearances:**

EMILY B. MARKS
ROBERT N. HUNN
KOLSBY GORDON ROBIN SHORE & BEZAR
2000 MARKET STREET
28TH FLOOR
PHILADELPHIA, PA 19103

    On behalf of plaintiffs

ANDREW S. TURKISH
GEORGE L. PSAK
PSAK & ASSOCIATES
127 UNION AVENUE
MIDDLESEX, NJ 08846

    On behalf of defendant

**HILLMAN**, District Judge

    This action concerns plaintiffs' claims for negligence and emotional distress when the nine-year-old plaintiff's eye was impaled by a clothing display hook at a Marshalls Department

Store.  Presently before the Court is defendant's motion for summary judgment.  For the reasons expressed below, defendant's motion will be denied.

### BACKGROUND

On July 12, 2010, plaintiff, Delaney Gould, then age 9, was shopping with her parents, plaintiffs Jennifer and Thomas Gould, and her two younger sisters at a Marshalls Department Store in Mays Landing, New Jersey.  In the children's clothing section of the store was a slatted wall with 10-inch hooks protruding from the wall to hold merchandise.  About a foot away from the display wall was a four-sided clothing display rack (a "rounder") holding clothes.  Delaney moved between the rack and the wall to try on a bathing suit top.  After trying it on, she bent down to retrieve her shirt.  As she did so, her eyelid was pierced by an empty wall hook that plaintiffs claim was obscured by clothing hanging from a hook above.  Hearing Delaney scream, her mother, who was a few feet away, detached the hook from the wall, and her father then pulled the hook from her eye.

Delaney was taken to the local emergency room, and was then transferred to Children's Hospital of Pennsylvania.  As a result of the laceration to her eyelid, Delaney has permanent Ptosis (drooping) of her left eye.  On August 27, 2010, Delaney underwent surgery for Ptosis repair of her left eyelid and anterior levator resection.  On September 15, 2010, she underwent a second surgery.

At this time she is not a candidate for further surgery to improve her condition. In addition to the drooping, her eye does not close completely, causing her to experience dryness and tearing. Delaney has had difficulty adjusting to the way her eye now looks and feels.

Delaney and her parents filed their complaint against defendant TJX Companies, Inc., which operates the Marshalls store, asserting claims for negligence, parental per quod, and negligent infliction of emotional distress. Defendant has moved for summary judgment on plaintiffs' claims, and plaintiffs have opposed defendant's motion.

## DISCUSSION

**A.   Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**B.   Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R.

3

Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### C. Analysis

#### 1. Negligence

Plaintiffs claim that defendant was negligent in creating a hazardous condition consisting of 10-inch hooks projecting from a wall at a child's eye level, where if obscured by clothing hanging from above, serve as latent spears to pierce the eyes or eyelids of children.  Defendant argues that plaintiffs' negligence claim fails because they cannot establish that it created a dangerous condition or knew of a dangerous condition.  Defendant also argues that plaintiffs' lack of an expert witness is fatal to their claim.  Defendant's arguments are unpersuasive.

The law governing a business owner's liability for injuries sustained by its patrons is well-established in New Jersey. "Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314, 316 (N.J. 2003) (citing Restatement (Second) of Torts § 343 (1965)) (other citations omitted).  "The duty of due care requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." Id. (citation omitted).

With regard to a plaintiff's burden of proof, "[o]rdinarily an injured plaintiff asserting a breach of that duty must prove,

5

as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." Id. (citation omitted).  Where, however, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents, a plaintiff is afforded "an inference of negligence, imposing on the defendant the obligation to come forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard." Id.  This is called the "mode-of-operation" rule. Id. (explaining that the mode-of-operation rule has been applied to self-service areas, such as in produce departments and around beverage dispensers).

    Plaintiffs in this case have demonstrated material issues of disputed fact as to defendant's negligence under either theory of premises liability.  With regard to the mode-of-operation rule, the placement of a clothing rack only a foot from a wall with protruding hooks is a typical layout for this Marshalls store.  A reasonable jury could find that this layout is a dangerous condition inherent to the store's mode of operation because the store intends patrons to pass between that tight space and browse and inspect the clothing hanging from both the rack and the wall.  A reasonable jury could also find that the inherent dangerousness of this layout is magnified by the hooks being placed at a child's

eye level in the children's clothing section of the store, and by the fact that clothing hanging from above could obscure a hook from view.

With regard to defendant's knowledge of the dangerous condition, a defendant has constructive knowledge "'if the condition existed for such a length of time that the business owner should have known of its presence.'" Bezglasnaya v. Trump Entertainment Resorts, Inc., 2013 WL 796308, 4 (D.N.J. 2013) (quoting Bozza v. Vornado Inc., 200 A.2d 777 (N.J. 1964)).  A plaintiff does not need to prove exactly how long the dangerous condition existed if the facts otherwise demonstrate that a defendant had constructive notice. Id. (citation omitted).  If a plaintiff presents material facts that suggest defendant should have been aware of the dangerous condition, summary judgment should be denied because whether a defendant in fact had constructive notice is a question for the jury. Id. (citing Monaco v. Hartz Mountain Corp., 840 A.2d 822 (N.J. 2004)).

In this case, a reasonable jury could find that defendant had actual or constructive knowledge of the danger of the wall hooks because: (1) two weeks before, the Marshalls store replaced straight wall hooks with curved "safety" hooks, thus evidencing awareness of the need to protect customers from protruding metal hooks; (2) it was Marshalls custom to remove empty wall hooks from the slat walls or hang clothing on empty hooks when employees made

7

rounds inspecting the condition of the store; and (3) it admitted that hanging clothing can obscure empty hooks from sight.

Defendant argues that its store layout is not dangerous, as customers are not supposed to pass between the slat wall and the clothing display rack.  Defendant also argues that it did not have any actual or constructive knowledge of the offending hook, it could not have known that a child would try on clothing between the rounder display and the slat wall and impale her eye on a hook, and it is "pure speculation" that the hook was obscured from view.  Moreover, defendant argues that plaintiffs have not provided any expert testimony that defendant breached a duty of care to plaintiffs.  Overall, defendant contends that it was simply an unfortunate "freak" accident that it cannot, and should not, be held liable for.

It is true that the mere fact a person was injured, "in and of itself, is insufficient to establish liability against a defendant," Lee v. Shoprite, 2012 WL 1605205, 2 (N.J. Super. App. Div. 2012) (citing Simpson v. Duffy, 19 N.J. Super. 339, 343 (App. Div.), cert. denied, 10 N.J. 315 (1952)), and "not every property condition on which persons can hurt themselves is unreasonably dangerous or hazardous," Robertson v. Cousins Wholesale Produce, Inc., 2010 WL 2867928, 3 (N.J. Super. Ct. App. Div. 2010).  Here, however, the evidence shown by plaintiffs, and defendant's arguments in response, demonstrate sufficient material disputed

facts to allow the jury to decide whether defendant exercised reasonable care to provide its business invitees a "reasonably safe place to do that which is within the scope of the invitation." Butler v. Acme Mkts., Inc., 445 A.2d 1141, 1143 (N.J. 1982) (citing Brody v. Albert Lifson & Sons, 111 A.2d 504 (N.J. 1955)) (finding that it was for a jury to determine reasonable care where "the business invitor is in the best position to provide either warnings or adequate protection for its patrons when the risk of injury is prevalent under certain conditions, and because the public interest lies in providing a reasonably safe place for a patron to shop").

    Furthermore, when the issue of whether defendant breached its duty of care to the plaintiffs is sent to the jury, no expert testimony is required to assist the jury in making its determination.  It has long been held that except for most malpractice cases, there is no general rule or policy requiring expert testimony as to the standard of care.  Butler, 445 A.2d at 1147 (citations omitted) (also explaining that even in malpractice cases, "the facts of a given case may be such that the common knowledge possessed by laymen may permit a finding that a duty of due care has been breached," Klimko v. Rose, 422 A.2d 418 (N.J. 1980)).  "The test of need of expert testimony is whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether

the conduct of the party was reasonable." Id.; see also F.R.E. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. . . ."). Expert testimony is only needed to help to exclude other possible causes of the accident and avoid pure speculation. Yepez v. Sports and Games Funplex, 2008 WL 794997, 3 (N.J. Super. App. Div. 2008) (citations omitted).

In this case, whether a protruding metal wall hook placed at a child's eye level in the children's clothing section of a department store creates a dangerous condition is not beyond the ken of a lay jury. It is also not beyond a jury's common judgment and experience to determine whether defendant is liable for breaching a duty of care to plaintiffs by maintaining that dangerous condition. See, e.g., Roth v. Marina Associates, 2009 WL 2496803, 7-8 (D.N.J. 2009) (finding that expert testimony was not required to determine whether the several-inch drop-off of a sidewalk tree planter is a dangerous condition or whether defendant breached its duty by not maintaining the premises in a reasonably safe way, or whether stepping into the planter caused plaintiff's accident); Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110, 1121 (N.J. 1993) (finding that tripping on a step that one

is not expecting and is difficult to see does not involve a matter that is beyond the comprehension of jurors); cf. Shipley v. Target Corp., 2007 WL 987155, 3 (N.J. Super. App. Div. 2007) ("Resolution of the alleged dangerous condition, the steepness of the embankment, is dependent on plaintiff's contention that it was improperly graded. Under the circumstances presented, a determination of whether the grade of the embankment created a hazard sufficient to establish an unreasonably dangerous condition is "beyond the ken of the average juror.'"). Consequently, plaintiffs' negligence claim may proceed to trial.

    **2.    Per quod**

Delaney's parents have lodged a per quod claim against defendant to recover the expenses they incurred as a result of Delaney's injury. Defendant argues that the parents' per quod claim fails because they have not produced an expert to demonstrate their damages resulting from Delaney's injuries, and they are not permitted to a double recovery for those damages. Plaintiffs contest defendant's position.

Under New Jersey law, parents may recover damages for the loss of services, earnings, and medical expenditures resulting from injuries to a minor child. Tynan v. Curzi, 753 A.2d 187, 189, 192 (N.J. Super. Ct. App. Div. 2000) (explaining what is recoverable for a per quod claim, but declining to allow parents to recover for loss of companionship and society in a negligence

11

action).  Like with plaintiffs' negligence claim, expert testimony is not needed to prove damages that are readily calculated and attributable to plaintiffs' injuries.  <u>Butler</u>, 445 A.2d at 1147; <u>cf.</u> <u>Mauro v. Raymark Indus.</u>, 51 A.2d 257 (N.J. 1989) (explaining that courts have required the use of an expert opinion concerning future damages).

Here, Delaney's parents seek to recover for the medical expenses they incurred as a result of the injury to her eye, and they will present their medical bills as proof of that loss.  They will also be required to document their expenses and show whether they have been paid by a collateral source, such as insurance.  <u>See</u> <u>County of Bergen Employee Benefit Plan v. Horizon Blue Cross Blue Shield of New Jersey</u>, 988 A.2d 1230, 1234 (N.J. Super. App. Div. 2010)(explaining that the collateral source rule requires prevents a plaintiff from recovering cumulative, duplicative benefits); N.J.S.A. 2A:15-97 (codifying the collateral source rule).  Before proving damages, however, plaintiffs will have to first prove their premises liability claim.  <u>See</u> <u>McDonald v. Lederle Laboratories</u>, 841 A.2d 948, 953 (N.J. Super. Ct. App. 2004) (explaining that a mother's per quod claim is dependent only on proof that defendants manufactured a defective product, which proximately caused her son's injuries).

Accordingly, to the extent that plaintiffs can establish defendant's liability on their negligence claim, and they only

seek reimbursement for costs that do not require expert testimony, plaintiffs' per quod claim may proceed.

### 3. Negligent infliction of emotional distress

Delaney's parents have also asserted claims against defendant for negligent infliction of emotional distress caused by their horror of witnessing their nine-year-old daughter impaled with a large metal hook in her eye.  Defendant has moved for summary judgment, contending that plaintiffs cannot demonstrate any severe or lingering emotional distress.

New Jersey law recognizes a claim for the negligent infliction of emotional injury experienced by a bystander who witnessed serious injury to a family member. Dunphy v. Gregor, 642 A.2d 372, 374 (N.J. 1994) (citing Portee v. Jaffee, 417 A.2d 521 (N.J. 1980) (explaining, "It is the presence of deep, intimate, familial ties between the plaintiff and the physically injured person that makes the harm to emotional tranquility so serious and compelling.  The genuine suffering which flows from such harm stands in stark contrast to the setbacks and sorrows of everyday life, or even to the apprehension of harm to another, less intimate person.").  For a bystander-claimant to prevail, the claimant must demonstrate "'(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between the plaintiff and the injured person; (3) observation of the death or injury at the

13

scene of the accident; and (4) resulting severe emotional distress.'"  Id. (quoting Portee, 417 A.2d at 528).

In order to demonstrate the fourth element, a plaintiff does not need to provide expert testimony or demonstrate psychological treatment.  See J.W. v. L.R., 740 A.2d 146 (N.J. Super. App. Div. 1999); Smith v. Grandsen, 2011 WL 7777106, 5 (D.N.J. 2011) (citing Portee, 417 A.2d at 528; Ortiz v. John D. Pittenger Builder, Inc., 889 A.2d 1135 (N.J. Super. Ct. App. L. Div. 2004)). Plaintiffs must prove, however, "genuine and substantial emotional distress or mental harm to the average person," and they "cannot recover for idiosyncratic emotional distress that would not be experienced by an average person," or for general upset and anxiety.  Wigginton v. Servidio, 734 A.2d 798, 807 (N.J. Super. Ct. App. Div. 1999); Rocci v. MacDonald-Cartier, 731 A.2d 1205, 1209 (N.J. Super. App. Div. 1999).  The determination of whether emotional distress can be found in a particular case is a question of law for a court to decide, leaving the jury to decide if it had been proved in fact.  Rocci, 731 A.2d at 1209-10 (citing Buckley v. Trenton Saving Fund Soc., 544 A.2d 857 (N.J. 1988)).

Delaney's parents have testified to the serve emotional distress they suffered as a result of the injury to her eye, and the store manager has testified to the severity of the parents' emotional state at the scene.  Testimony in the record shows that other customers fled the building upon hearing Ms. Gould's screams

14

because they thought someone had been stabbed.  Ms. Gould also was proscribed Xanax by her doctor due to her emotional trauma of her daughter's eye injury.

As the New Jersey Supreme Court observed, "The emotional harm following the perception of the death or serious injury to a loved one is just as foreseeable as the injury itself, for few persons travel through life alone."  Portee, 417 A.2d at 528.  Plaintiffs' expression of the severity of their emotional distress is sufficient to go to the jury.  It is up to the jury to determine the extent of their emotional distress and to what degree it is compensable.

## CONCLUSION

For the reasons expressed above, defendant's motion for summary judgment shall be denied.  An appropriate Order will be entered.


Date: March 26, 2013           s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.